14-2482 and 14-2542 Geraldine Burley et al. v. Jefferey Gagacki et al. and Pat Brown and B. Woloski Argument not to exceed 15 minutes for the plaintiffs, 15 minutes to be shared by defendants We have Mr. Blake, you may proceed for the appellants Thank you. Good morning your honors, Dave Blake on behalf of the appellants, Geraldine and Carolyn Burley I would respectfully request four minutes for rebuttal Your honors, we've laid out each of our points on appeal in our pleadings and I'm going to focus on what I feel are the four most important issues that were raised and then we'll rely on our papers with respect to the motions in limine To begin your honor, we'll start with the motion to recuse We feel that based on all the proceedings, the first trial, the conduct by the trial court in the first trial this court reversing the decision following the first trial and then the conduct during the second trial or I should say the pre-trial proceedings before the second trial Judge Friedman should have recused himself from the second proceeding and I think that we've laid out those arguments succinctly in our pleadings where you look at the conduct during the first trial, the animosity towards the parties basically suggesting that the defendants move for a judgment as a matter of law following our close of proofs show that there was some animosity there and then we take the case to the Sixth Circuit this court reverses Judge Friedman, we go back down and the animosity was present during the pre-trial proceedings during our facilitation, everything at that point it became very clear that there was some animosity towards the parties and you look when we tried to start the second trial I was informed at 5 o'clock in the morning the day of trial that my client had been hospitalized the night before and that was from my co-counsel Mr. Ecole at that time I made the decision not to inform the court at 5 o'clock in the morning that we would be trying to postpone the trial and I felt that it was of such a nature that all parties should be present when I presented that information to the court at 8.30 that morning we came into court, I explained that to the judge and he ultimately did postpone the trial but sanctioned us approximately $2,500 for not informing the court that morning that my client had been hospitalized and that's just one example of the hostility towards the parties at that point. And I'll rely again on my pleadings with respect to the other instances that we've outlined for the court to consider with respect to that argument. The second point, your honors, is the motion to shift the burden of production. When this case came before the court in 2013 we requested that the court adopt the Ninth Circuit shifting of the burden of production for these officers to identify themselves and again this is a case where during the initial pleadings there was no mention or no indication that the officers would not say that they were at this particular house during this housing raid. And when we came before the court on our last appeal they left it up to Judge Friedman to determine whether or not he would implement the shifting of the burden of production for these officers to identify themselves. And I think it's at the cornerstone of constitutional rights for officers not to be able to conceal their identity and then when they're framed, asked point blank by participants during this raid, who are you, who are you, and they never have an opportunity and never have any opportunity to ascertain the identities of these officers. And I think that's exactly what this court was looking for Judge Friedman to do, particularly in light of the first case, the first trial where they steadfastly denied that they were there even though there is documentation that each of these officers was present at the raid of my clients. And again, my clients did everything that they could to identify these officers and it's constitutionally unfair to go into court and have these guys say, oh we're not there when there's documentation that they were present. As far as the other issues. Before you move on to that, we remanded in the 2013 opinion for the district court to consider whether he should apply the Dobner burden shifting approach that the Ninth Circuit had. Dobner was a false arrest case. It was not an excessive force case, which we have here, which is governed by the Fourth Amendment. So you have a distinction there. And then also the Ninth Circuit that developed the Dobner doctrine in Johnson v. Bay Area Rapid Transit 2013 case actually held that Dobner's false arrest burden shifting does not apply in the other contexts, including the Fourth Amendment. So if we're going to file the Ninth Circuit, shouldn't we also file the distinction that they've made that it doesn't apply in this instance? Well, Judge Griffin, I think that, again, if you look at the holding in Dobner and also if you apply that to the facts in our case, you have interrogatories, written discovery, everything presented to the defendants to identify who was present during this raid. And they don't acknowledge at that point that they were not there. Then we take their depositions following the statute of limitations running, and then they start claiming, no, we're not there. And I think if you look at the broad parallel of constitutional law, under any reasonable circumstances you can't. Do you have the authority to support your proposition that Dobner should be extended to this situation of Fourth Amendment excessive force? I don't have any authority, Your Honor, but I think if you look at the facts, that you cannot reward somebody entering a home and there's documentation that these particular defendants were present. That is established records that they were present at this home. And then they claim that they weren't there and say, oh, it was just Team 11. Okay. There's a doctrine in some states under tort law, like it usually arises out of medical malpractice, where you have a bunch of people working on an operation and they all say, I didn't do anything negligent, but the person comes out of the operation without a leg or something like that. And in some states, if none of them says who did it, then they can all be jointly and severally liable in a tort-type suit. That's not exactly the same as shifting the burden of production. That's kind of a special rule that you're all jointly and severally liable because you have an evidence conspiracy problem. So I'm wondering what it is that you're arguing for. Are you arguing for something that's that strong or are you just arguing for a more classic burden-shifting rule that just says, if you, the defendant, don't say anything about whether you were there or not, it can go against you. You have to produce some evidence that you weren't there. That's a burden of production. But that's a lot less than saying you have to say who was there. Two different productions involved. Are you arguing for the latter stronger? They have to point the finger at someone else? Or are you merely arguing for a burden of production? They have to come forward with evidence that they were not there. No, I'm, Judge Rogers, arguing that they have to produce documents and acknowledge that they were present. They were present, but they're not going to say they were present. They're going to say they weren't present. Right, but you have a document showing unequivocally that they were present. And they come in, and so now they have to have countervailing evidence. Is that what's required? But see, you can countervail evidence without saying who else was there. That's what I'm asking. Are you asking for production of evidence of who else was there on pain of paying yourself? Or are you asking for some evidence that you were not there to countervail the inference that you were there from the absence of any evidence? To me, maybe I haven't expressed it right, but in my mind those are two very different things. I understand what you're asking, Judge Rogers. I would say that we are asking for production of who was present during this raid. And we ask that throughout. That's maybe even stronger than Dubner, and it's a much stronger inference. It's a much more drastic thing that you're asking. Because what might happen is they might not know and then be liable. And in that tort situation, we just don't care. The testimony here in the second trial was that they didn't know, wasn't it? The federal agents, wasn't the question asked? Well, if you guys didn't do it, who did? They just said, we don't know. We answered the question, but what you want us to say is that can't be accepted? I don't think it can be accepted, Judge Griffin. Again, when you have all these questions during written discovery, you have a document listing each one of these defendants present during the raid. You have Officer Gagacki testify. He is present following the raid. We may have made a mistake in the first opinion by affirming the summary judgment for the local defendants and the state defendants. Because they're the other people in the mix here. And if we did make the mistake of affirming summary judgment, I guess your remedy was to appeal that to the Supreme Court. I see my time is winding down here. Do you have any other questions at this time? That's the issue. I understand it. You make a strong argument. Thank you. Thank you. Good morning, Your Honor. My name is Gus Morris and I represent one of the task force agents, Brian Woloski. Defense counsel here in the appeal have decided to split their time three ways and separate the issues. So I'm going to take a maximum of five minutes to discuss the burden shifting issue with respect to Dubner. As Judge Griffin pointed out, certainly Dubner is limited to the false arrest scenario. And again, as you correctly point out, it has been specifically said not to be applicable to the force scenario. But I would add to that discussion the following. I don't think factually, even if you were going to say we'll apply the Dubner schemata to a force situation, I don't think factually it even applies in this case. And here's why. The plaintiffs, as well as one of the witnesses, actually identified some of the task force agents as being present during the alleged acts of excessive force. The initial testimony from the plaintiffs early on in this case when you got it on appeal was they were masked. But when that was fleshed out at the second trial, that in fact was not the case. Christopher Burley, the witness, son of one of the plaintiffs, actually testified before this jury that the large, bald, heavyset agent that stomped on his grandma's knees was in fact not masked. And he described him specifically. And the plaintiffs themselves in the second trial, first trial, said voice identification of one of them. In the second trial they specifically identified Woloski, my officer, and the other officer as being present in the home. So for me it doesn't become a situation where should we shift the burden because once they say Gagacki, Woloski, they were in the house and those officers then get up in front of the jury and say, no, we weren't. We were at the house down the street when these things happened. Then it becomes a classic credibility question, doesn't it, for the jury? Are they going to believe the plaintiff's testimony that these officers were in the house? It's not going to be a burden of production issue unless you have some sort of specialized burden of production that requires you to find evidence that somebody else did it. Yes, that's correct. So the jury just believed the officers in this case. That's exactly what happened. And I would argue, and again this doesn't necessarily apply to the legal issue, we make a mistake in the first opinion by letting out the state and local officers who were the only other people that could have entered the house and done the excessive force. Because that's our only choice. We've got federal, state, and local. In the first case, we let them out, the state and local guys, and the only ones left were the federal. Was that an error then? Well, I think maybe it was a mistake. I'm not sure it was an error, but there were things I think the plaintiffs could have argued to keep them in the case at that point in time. Anybody else? Yes, there was an officer they settled with prior to trial who arguably may have been one of the ones that were in the home. He didn't testify one way or the other, but there was a settlement. And others were let out or not argued as being present. And in fact, some of those officers were actually subpoenaed and testified as witnesses in this case. And it's not, I don't think it's in the record, but anecdotally one of them was bald and heavy set. And he was not named as a defendant in the case or was no longer a defendant at that point in time. We didn't represent him. A jury could have inferred that it was him that did it as well. But maybe it was a mistake, but I think it was a strategic one on behalf of the plaintiffs not to pursue those claims against those individuals perhaps a little more vigorously. And that's all I have to say on the shifting issue, so I'm going to defer to sister counsel. Thank you. Good morning, your honors. May it please the court. My name is Julie Flynn-Linderfrain, and I represent Pat Brown in this matter. And I'm going to address the Batson challenge. As this court knows, there is a three-step analysis with respect to the Batson challenge. And I believe, I submit to this court, that the lower court, Judge Friedman, followed all three of those steps when he ruled on plaintiff's challenge under Batson. Plaintiffs made out a prima facie case that we used one of our peremptory strikes against an African-American female juror. Two of us attorneys stepped forward and said we were the ones that wanted that particular juror to be stricken for a race-neutral reason. I cited one of the reasons. In my cases, I tend not to pick teachers in my cases. I try a lot of criminal cases, not a lot of civil cases. And I stepped forward and said my race-neutral reason is that this person was studying to be a teacher. I did not want her on our jury. What's the rationale for that? Well, Your Honor, that's a very good question. One of my mentors years ago suggested that teachers and engineers don't make good jurors, particularly teachers, because the thing that makes someone a good teacher is perhaps someone that makes not necessarily a good juror. They have a lot of empathy, and they kind of root for the underdog. And in this particular case, my thought process was I didn't want a juror who was going to root for the underdog in this case. So that's my reasoning. Like I said, it stems from one of my mentors who suggested that teachers, in particular instances, you don't want them to use that quality that makes them a good teacher, having a lot of empathy and rooting for the underdog. So Judge Friedman, he then went to the next step, which was assessing our credibility. As I said, there were two of us who stepped forward and said we didn't want this particular juror. And he looked at us, he assessed our credibility, and he determined that, again, this is all in the record, it's a sealed jury voir dire record, but he said that no party has a right to a specific makeup of jurors. You simply have a right not to exclude based on race. As I said, he assessed my demeanor, he assessed the other attorney's demeanor, and he said that he accepted our reasoning. So he followed all of those steps that are required under Batson. I just wanted to say one quick thing. I wasn't charged with speaking about Dubner, but I just wanted to point out that my client, Pat Brown, was actually one of the officers who was placed at the scene. Now, he denied being there at the time of the excessive force, but he was identified by voice. But in terms of that burden shifting, that burden of production shifting, we did come forward. We had testimony from Calvin Harris, who was the supervisor in charge that day, saying that, nope, I know unequivocally that Pat Brown was not at that really address. He was at the other address. So we did come forward with evidence to show that my client was not there. So even though I don't agree with the Dubner shifting analysis, that's what happened in this case. We did come forward. There were lists of people. They chose to go forward against these particular defendants. I also need to address Mr. Blake, that he wasn't going to address the motion in limine regarding whether or not Patrick Brown's previous lawsuit should come in. I just want to mention, I won't say much about it, but I think the judge did not abuse his discretion. The lawsuit was from when Pat Brown was in his first year of being a police officer. He didn't choose to have that lawsuit brought against him. It was brought against him. There were not good allocations. He was actually dismissed from the case. The city settled with respect to the city, not with respect to the officers. If you have any questions, I'll sit down. Did the notice of appeal appeal generally from the verdict, or did it apply to certain specific orders? Well, his notice of appeal, I argued in my brief that the notice of appeal did not actually identify the Batson issue. So you're also arguing that there's no jurisdiction to reach that? Yes, that was in my second page of notes. Yes, Your Honor, I would argue that was not timely filed. He didn't identify it in his notice of appeal. He argued it in his brief, but it was not identified in the notice of appeal. So under Federal Rule Appellate Procedure 4, it would be untimely. What about the recusal issue? I'm sorry? The recusal issue of Judge Friedman. He says he gets fined $2,500 because he didn't wake up Judge Friedman at 5 o'clock in the morning, and that shows prejudice. I mean, my sister counsel will be addressing that, Your Honor, but absolutely not. I think Mr. Blake may have misspoken. His client was not hospitalized the night before. She had been in the hospital a couple of days prior. She had been admitted I think at least two days before, the Friday before. There was also another phone call placed to the chambers. The sanctions were vacated, were they not? No, they were paid. My understanding is they were paid. Okay, I thought he kind of corrected himself for Judge Friedman. There was no correction of the ruling or modification of it? I would have to defer to the record. I don't believe so. I believe they were paid. They were charged and they were paid, but I think the court has to understand we went through an entire jury process of picking a jury. Nobody cares about our time, obviously, but we spent the weekend preparing. The jurors in federal court, obviously jurors come from all over the place. These weren't just people who woke up. Basically the cost of the jurors. The jurors' time, yes. That was all that was assessed. Thank you. Good morning, Your Honors. May it please the Court. Ann McClory McLaughlin appearing for the defendants' appellees, Jeffrey Gagacki and Sean Reed. I will be addressing the recusal and the evidentiary issues that plaintiff has raised. But before I do, I would like to reiterate as well the point that you just made, Judge Rogers, and that is that the notice of appeal identified very specifically the orders of the trial court that were being appealed at that time. In fact, that was the basis for a motion to dismiss the appeal that I filed on behalf of my clients because they had not identified that they were appealing the judgment itself, which of course underlies all of the questions that are before the court. The Batson issue was not one of them, and I believe that the plaintiff has waived the jurisdiction of the court to review the Batson issue itself. With respect to the issue of recusal, the plaintiff focused here on all of these issues from the prior trial that occurred in 2012 and has argued that there is some kind of deep-seated animosity that Judge Friedman held towards the plaintiffs here. And he believes and has presented to the court the assessment of the juror expenses. However, he did not sanction the plaintiffs or their counsel. That was a local rule in the Eastern District of Michigan that if a jury does not serve for cause that can be attributed to a party or their attorney, then the juror expenses shall be assessed. It was not any kind of a ruling by Judge Friedman. It was simply the clerk's doing, and Judge Friedman enforced the clerk's order. Also with respect to the recusal, the plaintiff has not provided any personal or extrajudicial reasons that they believe Judge Friedman was allegedly biased against them. Nor, and I think most importantly, they haven't pointed to any part of the record that shows that that had some effect on the outcome of the trial. And that really is the question here. The second trial that occurred in 2014 was a jury verdict in favor of the defendants on the first question that was asked of them. That was, were the defendants present when the search warrant was executed? And they said no. That was a unanimous verdict and because we believe the defendants presented sufficient evidence to discredit the report in which they were identified. In addition, the agent who wrote the report admitted that he probably cut and pasted names from one report to another and didn't have a good handle on who was actually there. With respect to the other evidentiary issues, the plaintiff did raise some other motions in limine that they had been denied by Judge Friedman. But Judge Friedman also denied specific motions of the defendants as well. There were several motions in limine by my office on behalf of our clients, by Ms. Dufresne on behalf of her clients, by Mr. Morris on behalf of his client. And several of those were denied. So Judge Friedman showed his even-handedness. I think he gave the plaintiffs enough rope to hang themselves in this case. And I believe that the jury considered a full case here without regard to any bias by the judge. Certainly the substantial rights of the plaintiff were not affected by any of the evidentiary rulings. Plaintiffs did not even argue in their brief here what happened during the trial, how these matters affected the outcome of the trial. And therefore, Your Honors, we believe that the verdict itself should be affirmed by this Court. One other issue. We had filed a cross-appeal on some jury instructions that we had requested of Judge Friedman, again, also showing his even-handedness in this case. That should have been... That's a good argument. The judge has a score, you know, I held for you last time, I'm going to hold for you this time. I appreciate that, Your Honor. But my argument is only that because we have all made issues or arguments pertaining to the doctrine of law of the case because this appeal came to the Court once before. We've raised these issues only in the event that the Court feels it necessary to remand this case for yet a third trial. And we would request that those additional instructions be... If the case were unlikely remanded, that those instructions should be provided to another jury. But that's only a prophylactic argument here. We're not in any way suggesting that the original verdict was infirm in any way. Thank you. Thank you, Counsel. Just a brief rebuttal on some of the issues raised, Your Honors. Judge Griffin, I just wanted to touch on your point with respect to the state actors who were present and whether or not there was a mistake by letting them out. What we have here is, I believe, six or seven officers identified, again, on the information report that they were present during the Greeley Street Raid. And the reason the Court cited for dismissing the other state actors were they were not present in the home during the raid. They were all periphery. And so that argument that... The reason why we were focusing on the people who were listed on the report is because they were the ones who presumably were present at the raid. With respect to the Batson argument, again, looking at teachers and engineers and people who have empathy, I don't believe that's a race-neutral basis for rejecting an African-American female in our case. But I'll leave that to the discretion of the Court. With respect to the motion to recuse, again, we've pointed out and laid out each one of the points in our papers that show that there was bias here. You have a judge interrupting counsel when he's cross-examining... That was all in the first trial. That's correct. And again, Judge Rodgers... You're saying that he was rude and biased in the first trial and therefore he must have been in the second trial, but I don't see any instances of alleged bias in the second trial. And also, in the first trial, in regard to the assessment of the $2,500 fee, I guess I thought it was vacated because it's not appealed. I mean, if he was... committed error in assessing that sanction, I would think that that would be an Issue 1 appeal, but because it's not, we assume that it was correctly assessed, that there was no error in assessing $2,500, and that no bias... was a correct ruling. That is the second trial. That's correct, Judge Griffin, but the issue with that is my client was hospitalized. I know, but if it's so egregious, why isn't it appealed? I believe, Your Honor, that we encompass that with the whole issue with respect to the recusal. And that's one of the points as... That's correct. The fact that the judge interrupts and asks questions is permitted to do that, in fact. In federal court, federal judges are permitted to comment on the evidence. Did you know that? I did know that, Your Honor, but if you look at the context of how the first trial was proceeding, at one point I had Scott Harding, who was the officer who ultimately settled his claim following the first trial. I had him on cross-examination. He was in a vulnerable position, and the court interrupted and said it was time for him to have a water break. And I understand that there is great discretion for the court to interject and conduct the trial as it sees fit, but that's just one example of how he conducted himself during the first trial. But you don't have any of those examples for the second trial, so that's kind of moot, right? I would say, Your Honor, that if you look at the conduct during the second trial, there was... Did you raise it? Raise these things that you're going to tell me? We did, Your Honor. I believe they're in our papers. Okay. Counsel, like you, I'm troubled with this idea that public officers can render themselves anonymous and thereby defeat constitutional remedies. Stated that broadly, it's offensive. I wonder, though, if you can... The trouble with having... It's sort of like in school, the teacher says, who broke the window? And there's five people and they all be quiet. And the teacher says, well, I'm just going to punish all of you. That's a problem as well. They shouldn't be able to get out of it. I know this is much more serious, but there's a weighing of interests. And if we have a system where people are required to testify and to, in effect, tell who else did it to point the finger or to go and find out who did it and point it, that's itself got some underlying concerns. I wonder if there's some sort of way we can deal with this problem without going all the way there, that maybe we wouldn't necessarily hold, but we could at least preserve it in an opinion. Is there any way that this can be dealt with? Do you see what I'm asking? I do. And I think the one thing, and by no means am I a constitutional guru. I'm a trial lawyer. I come up and I argue this. But what we have here, and I think what is across the board that has to be addressed is you have officers who flatly deny that they're present, and you have documentation showing that they were there. The documentation is not conclusive. I mean, that is good evidence to use against them. But just because a police report says something, it doesn't mean that the officer's testimony to the contrary has to be disbelieved, because it's contrary to a written report. We see that all the time. When it's drafted by the defendants who were present? Yeah, you could admit it. It's admissible evidence, but it's not dispositive. And here, you don't have everybody being silent. They all said, it wasn't me, it wasn't me. Well, who was it? I don't know. And it does seem illogical, and I guess the only thing, other than somebody is lying, is maybe there was another defendant that just wasn't named that could have defendants, I guess, because we have defendants entering this house. But it's troubling, but they did answer, it wasn't me. Who was it? I don't know. I wasn't there. And that's what they all said. And that's the problem. You have discovery in this manner, do you not? In this case? Yeah. We did. I mean, that's kind of the safeguard, I think, the best we can come up with. And if you've got somebody lying and you've got documents that show they're lying, that's a question of fact. Right. When you have discovery that specifically requests who was present, and they respond by saying, we did not cause the injuries as alleged by the plaintiffs in this case. Wait for the statute of limitations to run. You didn't ask each one of them, were you there? And we did, after the statute ran, and they, at that point in time, began to deny that they were even present. It's not their fault that the statute ran. It doesn't make them liable. Okay. Any other questions? Thank you, counsel. The case will be submitted.